Filed 12/10/24  P. v. Duisen CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KURT KENNETH DUISEN et al.,<br><br>    Defendants and Appellants. | E081281<br><br>(Super.Ct.Nos. FSB20003691 &<br>FSB20003692)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Alexander R. Martinez, Judge.  Affirmed.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant Kurt Kenneth Duisen.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant David Macias.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier, Warren Williams,

Kathryn Kirschbaum, and Nora S. Weyl, Deputy Attorneys General, for Plaintiff and Respondent.

Kurt Kenneth Duisen and David Macias (collectively, Defendants) each appeal from sentences imposed following convictions for, among other crimes, home invasion robbery (Pen. Code,[1] §§ 211, 213, subd. (a)(1)(A)), and assault with firearms (§ 245, subd. (a)(2)), along with findings that Defendants each had been previously convicted under the "Three Strikes" law (§§ 667, subds. (b)-(i); 1170.12, subds. (a)-(d)), as well as having been previously convicted of serious felonies (also known as nickel priors) (§ 667, subd. (a)(1)). The convictions arose from Defendants' forced entry into a residence with firearms, where they corralled the victims, and robbed one of them of money, a gun, and two pounds of marijuana. The trial court made true findings on seven aggravating factors before imposing sentences of 25 years for Macias, and 28 years, 4 months, for Duisen. Both Defendants appealed.

On appeal, Defendants argue that their sentences violate amended provisions of section 1385, added pursuant to Senate Bill No. 81 (2021–2022 Reg. Sess.) where the trial court declined to exercise its discretion to strike the enhancements in the interests of justice. Defendants also argue the trial court abused its discretion in selecting their prison terms, among other sentencing challenges under section 1170.1. We affirm.

---

[1] Except as otherwise indicated, all further statutory references are to the Penal Code.

# BACKGROUND

On October 28, 2020, at approximately 8:30 a.m., the Defendants broke down the front door of a residence occupied by the victims, Valerie Franco (Valerie),[2] Valerie's boyfriend, Benito Sandoval (Benito), Benito's younger sister Madelyn Sandoval (Madelyn), and Benito's uncle, Juan Bucio (Juan). Both of the Defendants were masked[3] and armed with firearms: one had a handgun, while the other had a shotgun, and, as they entered the home, they yelled, "LAPD!". Benito, Madelyn and Valerie had been upstairs at the time of the home invasion, and were all ordered to come to the stairs by the suspect who had the handgun, identified as Macias. Macias then went into the downstairs bedroom and ordered Juan to come out.

With all four victims on or near the stairs, Macias directed Juan to go back to the downstairs bedroom, Macias pointing his gun at Juan as he followed behind Juan, while the other suspect Duisen, with the shotgun, stayed by the other three victims who were now by the stairs. Macias demanded money from Juan, and then asked Juan for a gun. Juan gave Macias cash in an amount exceeding $1000 and a handgun that Juan kept in his nightstand. Macias also took an ice chest containing approximately two pounds of marijuana. After taking the money, gun and ice chest, the Defendants left the house, warning the victims not to call the police.

---

[2] We refer to the victims by their first names to avoid confusion. No disrespect is intended.

[3] The witnesses described the masks as being tied and going up over the nose. The masks were later referred to as bandanas, and a witness from across the street identified the Defendants' face coverings as bandanas.

The Defendants left in separate vehicles:  Duisen drove a blue jeep, while Macias drove a white truck.  Duisen was apprehended in the jeep after a pursuit by law enforcement, during which Duisen was observed throwing a baggy from the jeep.  The pursuit ended when Duisen rammed his jeep into the side of one of the patrol vehicles that had pulled up alongside the jeep and was then closed in from behind by a second patrol vehicle.  A deputy sheriff who was a passenger in the patrol vehicle was pinned in by the impact from the side of the jeep, having to exit the vehicle through the driver's side door.  The jeep's push bar was stuck in the patrol vehicle.  Duisen was placed under arrest.  Law enforcement officers retrieved a wallet from Duisen's person, along with a cellphone that was ringing when seized.  The caller was identified on the cellphone screen as "Dave M." and it displayed the caller's phone number.  The cellphone screen was photographed.

Inside the jeep, law enforcement officers found a shotgun on the rear seat, along with shotgun shells and a knife.  A baggie was recovered and found to contain methamphetamine.

Later, a sergeant at the sheriff's office checked the jail information management system database to determine if the phone number that was photographed from Duisen's cellphone was linked to anyone who had been arrested, and found booking information for Macias, whose phone number matched the number that had called Duisen's cellphone at the time he was detained, and information that associated Macias to a white truck. Evidence from a surveillance camera in a nearby homeowners' association community

4

showed a white truck leaving the area of the home invasion robbery, allowing law enforcement officers to see the license plate number of the vehicle as well as the contents of the truck, including an ice chest on the front passenger seat.

Two days after the home invasion robbery, the same white truck was involved in a traffic stop that occurred in San Bernardino by a deputy, and with the information obtained during that stop, an arrest warrant was issued for Macias. Macias was arrested at an address obtained from that traffic stop.

The fourth amended information charged both Defendants with the offense of home invasion robbery (§§ 211, 213, subd. (a)(1)(A), count 1), along with enhancement allegations that each Defendant personally used a firearm (§ 12022.53, subd.(b)); assault with a firearm (§ 245, subd. (a)(2), count 2), during the commission of which, each Defendant personally used a firearm[4] (§ 12022.5, subd. (a)). Both Defendants were also charged, in separate counts, with possession of a firearm by a felon; as to Duisen, count 8 alleged he possessed a shotgun, while as to Macias, count 9 alleged he possessed a handgun. (§ 29800, subd. (a)(1).)

Separately, Duisen was charged with two counts of assaulting a peace officer (§ 245, subd. (c), counts 3 & 4), resisting an executive officer (§ 69, count 5), evading a peace officer (Veh. Code, § 2800.4, count 6) while driving on a highway in a direction

---

[4]    The testimony of some of the witnesses described the weapon used by Duisen as a shotgun, which is supported by the testimony of law enforcement officers who found a shotgun and shotgun shells in the jeep driven by Duisen at the time of his stop and arrest. However, victim John described the weapon as a rifle, and the neighbor across the street described seeing a long gun.

opposite to that in which traffic lawfully moves on a highway, and evading a peace officer (Veh. Code, § 2800.2, subd. (a), count 7), which offenses arose from the home invasion robbery incident. Duisen was also charged with another count of possession of a firearm by a felon (§ 29800, subd. (a)(1), count 10), along with an enhancement allegation that the crime was committed while Duisen was released on bail or on his own recognizance (OR). (§ 12022.1, subd. (b).)

The information also included an allegation under the Three Strikes law that each Defendant had been previously convicted of a serious or violent felony (§§ 667, subd. (b)-(i), 1170.12, subd. (a)-(d)), and enhancement allegations against each Defendant for the prior commission of a serious felony. (§ 667, subd. (a)(1) [nickel prior].) Finally, the information listed 18 possible aggravating factors which may apply in the case. (§ 1170, subd. (b)(2).)

Defendants were tried by a jury[5] and guilty verdicts were rendered in counts 1, 2, 6, 7, 8, and 9, while the jury hung on counts 3, 4, 5, and 10, resulting in a mistrial on those counts. The jury made a true finding as to the firearm use pursuant to section 12022.53, subdivision (b), for count 1, as well as to the firearm use allegation pursuant to section 12022.5, subdivision (a), for count 2, as to both Defendants. Duisen was found guilty of counts 6, 7, and 8, the violations of Vehicle Code sections 2800.4 and 2800.2, and section 29800, subdivision (a)(1).

---

[5] Macias had attempted to enter into a negotiated plea agreement with the People well before trial, but the offer was for a package deal including Duisen.

Macias was sentenced to an aggregate term of 25 years in prison, while Duisen was sentenced to an aggregate term of 28 years, 4 months in prison.[6] Both Defendants appealed.

## DISCUSSION

In sentencing each of the Defendants, the trial court considered various factors affecting sentence pursuant to sections 1170, subdivision (b), and 1385, subdivision (b), in light of recent amendments. (Sen. Bill No. 567 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 731), amending § 1170; Sen. Bill No. 81 (2021-2022 Reg. Sess.), amending § 1385.) Before addressing Defendants' respective contentions, we summarize the trial court's findings, made at the time of sentencing.

### A. *Macias's Sentencing*

At Macias's sentencing on April 7, 2023, the trial court denied probation and considered the applicability of section 1385, subdivision (c) to the enhancements found true, noting that because the Three Strikes law is an alternate sentencing scheme rather than an enhancement, section 1385, subdivision (c) did not apply. The court refused to exercise discretion to strike the section 12022.53, subdivision (b) firearm enhancement, reasoning that a court is not required to dismiss all but one enhancement under section 1385, subdivision (c)(2)(B) where to do so would endanger public safety. The court did find, as a possible factor in mitigation, that the imposition of the enhancement pursuant to section 12022.53 would result in a term in excess of 20 years.

---

**6**    Details of their sentences will be set out in the Discussion, *post*.

However, the court declined to strike or dismiss the section 12022.53, subdivision (b) enhancement because even if one or more mitigating factors or circumstances applied, they were outweighed by the consideration that dismissal of the enhancement would endanger public safety by resulting in Macias's faster return to criminal activity, given his extremely long criminal history. However, the court did strike or dismiss the enhancement found with respect to count 2, the assault with a firearm conviction.

Regarding Macias's prior conviction enhancements, the court found that section 1385, subdivision (c) did not apply to the so-called nickel prior, found true under section 667, subdivision (a), because it erroneously believed it was part of the Three Strikes law, and thus not an enhancement subject to section 1385, subdivision (c). Nevertheless, the court also concluded that even if the enhancement were eligible, dismissal of the prior conviction enhancement would endanger public safety.

Regarding the factors affecting the selection of the base term under section 1170, subdivision (b), the court found true the following factors in aggravation: the crime involved great violence, Macias was armed with a firearm, the victims were particularly vulnerable given the time of day when the crime was carried out, the manner of the execution showed planning, Macias had engaged in violent conduct making him a danger to society, Macias's prior convictions as an adult are numerous or of increasing seriousness, and Macias had served prior prison terms.

After considering the various sentencing factors, the court sentenced Macias as follows: count 1, the middle term of four years, doubled under the Three Strikes law for

8

a term of eight years, followed by a consecutive term of 10 years for the firearm enhancement under section 12022.53; count 2, one-third the middle term of two years, which was doubled under the Three Strikes law,[7] but stayed pursuant to section 654, but the court struck the firearm enhancement found true under section 12022.5, subdivision (a); and count 9, the court stayed a midterm sentence of four years pursuant to section 654. The court also imposed a five-year term for Macias's nickel prior enhancement.

## B. *Duisen's Sentencing*

On May 12, 2023, the trial court denied Duisen's *Romero* motion (pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*)) to strike his prior strike conviction, due to Duisen's "massive criminal history" spanning 43 years, the fact Duisen was on his own recognizance or bail at the time he committed the instant offenses as well as the fact he committed new offenses when released on bail or OR while the instant proceedings were ongoing, and that he committed a new offense of being a felon in possession of a firearm while released on current charges including the same charge.

Additionally, the court noted that while his prior conviction was remote, Duisen continued committing crimes, the current crime was one of violence, Duisen had been sentenced to prison at least 10 times, he was not young at the time of the current crimes, his involvement was not minimal in that he personally exposed the victims and the public to danger and violence, his record revealed a pattern of regular and increasingly serious

---

[7] The minutes indicate that the court struck the strike prior, but this was not reflected in the oral proceedings, in which the sentence was imposed pursuant to the Three Strikes law.

and violent conduct, his prior performance on probation or parole was unsatisfactory (he had never successfully completed a term of probation or parole), he showed no remorse and admitted no wrongdoing, his prior convictions were not part of a single aberrant course of conduct, and based on his 43-year criminal record, there was a high likelihood he would commit more crimes.

The court also addressed factors under section 1385, subdivision (c), relating to enhancements, concluding that the legislation did not require a court to strike all enhancements beyond a single one, where doing so would endanger public safety. The court therefore declined to dismiss the firearm enhancement to count 1, resulting in a term of more than 20 years (§ 1385, subd. (c)(2)(C)), because the mitigating circumstance was outweighed by the risk to public safety.

In deciding which of three possible sentences to impose, the court determined the upper term was appropriate, finding there were no factors in mitigation, while the following aggravating factors were found to apply: the crime involved great violence; Duisen was armed with or used a weapon; the victims were particularly vulnerable; the crime involved planning and sophistication; Duisen had engaged in violent conduct indicating he is a serious danger to society; his prior convictions as an adult are numerous and increasingly violent; and Duisen served prior prison terms.

The court then denied probation and committed Duisen to state prison as follows: count 1 (robbery), the upper term of six years, doubled due to the strike for a 12-year term, plus a consecutive term of 10 years for the firearm enhancement pursuant to section

12022.53, subdivision (b); count 2 (assault with firearm), a term of eight years stayed pursuant to section 654, along with the accompanying enhancement under section 12022.5, subdivision (a); count 6 (evading an officer against traffic), a consecutive term of one year four months (one-third the middle term of two years, doubled); count 7 (evading a peace officer with reckless disregard), upper term of three years, doubled for the strike for a total of six years stayed pursuant to section 654; and count 8 (possession of a firearm by a felon), the upper term of three years, doubled for the strike stayed pursuant to section 654. The court also imposed a five-year enhancement for the nickel prior, pursuant to section 667, subdivision (a)(1).

In addition to the custodial term, the court imposed a $10,000 restitution fine, pursuant to section 1202.4, subdivision (b), over Duisen's objection.

C. *Sentencing Challenges Raised in this Appeal*

1. *Duisen's Claim of Improper Dual use of Facts*

Duisen argues the trial court erred in imposing the upper term based on his use of a weapon, while also imposing a separate enhancement for the use of a firearm, violating the proscription against dual use of facts. Duisen argues the error constituted both an abuse of discretion and a violation of his due process rights. The People argue Duisen forfeited the issue by failing to object, arguing in the alternative, that even if one aggravating factor was improper, there were multiple circumstances in aggravation warranting the court's imposition of the upper term. We agree with the People as to Duisen.

11

Section 1170, subdivision (b)(5), prohibits a trial court from imposing an upper term by using the fact of any enhancement which is imposed under any provision of law. This provision differs from the predecessor version of the dual use prohibition, which prohibited use of the fact of any enhancement upon which sentence is imposed under sections 667.5, 1170.1, 12022, 12022.4, 12022.5, 12022.6, or 12022.7. (Ref. former § 1170, subd. (b); see *People v. Jackson* (1987) 196 Cal.App.3d 380, 388.)

But failing to object to the court's discretionary reliance on an aggravating factor in sentencing forfeits any claim of error. (*People v. Scott* (1994) 9 Cal.4th 331, 351-356 (*Scott*); see *People v. Anderson* (2023) 88 Cal.App.5th 233, 242 (*Anderson*) [defendant's argument that trial court failed to articulate reasons for upper term forfeited for failure to object]; *People v. Flowers* (2022) 81 Cal.App.5th 680, 683-684 [defendant did not object to the reasons stated for imposing the upper term]; *People v. Sperling* (2017) 12 Cal.App.5th 1094, 1100-1102 [defendant forfeited dual use issue, among other sentencing claims, for failure to object].)

Duisen recognizes this problem and attempts to circumvent it by relying upon the fact that Macias raised the dual-use-of-facts issue at his own sentencing hearing. However, Macias was sentenced one month earlier, in a separate hearing, and Duisen, who was not present at that hearing, did not join Macias's objections to the aggravating factors. We, therefore, do not need to reach this issue.

Nevertheless, it bears mentioning that the trial court cited seven circumstances in aggravation to support the imposition of the upper term. Key among those factors are

Duisen's intractable propensity to commit crimes in a career spanning more than 40 years, the sophistication and planning, as well as the careful coordination, of the present crime among other factors, which justify the upper term. "Under California's determinate sentencing system, the existence of a single aggravating circumstance is legally sufficient to make the defendant eligible for the upper term." (*People v. Black* (2007) 41 Cal.4th 799, 813, citing *People v. Osband* (1996) 13 Cal.4th 622, 728.)

The upper term was fully warranted.

2. *Whether the Trial Court Was Required to Dismiss All but one Enhancement Pursuant to Section 1385, Subdivision (c)(2)(B)*

Duisen argues, joined by Macias, that pursuant to the recent amendment to section 1385, subdivision (c)(2)(B), the trial court was required to dismiss all enhancements except a single enhancement. We disagree.

Senate Bill No. 81 (2021-2022 Reg. Sess.) amended section 1385 "to specify mitigating circumstances that the trial court should consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice." (*People v. Lipscomb* (2022) 87 Cal.App.5th 9, 16 (*Lipscomb*).) Section 1385, subdivision (c)(1), now provides: "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute."

The amendment goes on to provide in section 1385, subdivision (c)(2), that in exercising this discretion, "the court shall consider and afford great weight to evidence

offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.  'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."

The plain language of section 1385, subdivision (c)(2), means that if the court finds that dismissal of an enhancement "would endanger public safety," then the court need not consider the listed mitigating circumstances.  (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 296 (*Mendoza*).)  "The 'shall be dismissed' language in section 1385[, subdivision] (c)(2)(C), like the language of all of the listed mitigating circumstances, applies only if the court does *not* find that dismissal of the enhancement would endanger public safety.  That interpretation gives meaning to the language in section 1385[, subdivision] (c)(2) requiring the court to consider whether dismissal 'would endanger public safety,' and it consequently avoids rendering that language surplusage."  (*Ibid*.)

The California Supreme Court recently adopted this reasoning in *People v. Walker* (2024) 16 Cal.5th 1024, 1033 (*Walker*), in holding the plain language of section 1385, subdivision (c)(2) does not erect a rebuttable presumption in favor of dismissal that can only be overcome by a finding that dismissal endangers public safety, citing *Mendoza*, *supra*, at page 297, footnote 6.  There is no presumption an enhancement should be

dismissed whenever an enumerated mitigating circumstance is present; instead "'the ultimate question before the trial court remains whether it is in the furtherance of justice to dismiss an enhancement.'" (*Walker*, *supra*, at p. 1033.) Thus, unless the court determines that dismissal of an enhancement endangers public safety, the court should consider the presence of mitigating factors to determine if striking the enhancement would be in the furtherance of justice.

One such factor that a court may consider in deciding whether to strike an enhancement, refers to situations where "[m]ultiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed." (§ 1385, subd. (c)(2)(B).) The Defendants assert this factor mandates dismissal of all but one enhancement whenever multiple enhancements are alleged and found true. We disagree with this interpretation because it would render surplusage other language conditioning the dismissal of an enhancement on a determination that it is in the furtherance of justice to do so. (§ 1385, subd. (c)(1); Sen. Bill No. 81 (2021-2022 Reg. Sess.) Stats. 2021, ch. 721, § 1.) Indeed, a blanket interpretation requiring dismissal of all but one enhancement would strip trial judges of all sentencing discretion whenever more than one enhancement is found to be true.[8]

---

[8] We are not faced with a situation in which the People alleged multiple lesser included enhancements on a single count, to address situations in which the factfinder might find a lesser enhancement true, so we express no view on whether section 1385, subdivision (c)(2)(B) requires dismissal of included enhancements found true as to any given count.

15

Based on the authority of *Walker*, *supra*, 16 Cal.5th 1024, as well as cases cited in that decision and others which have adopted a similar interpretation of the statute, we reject defendants' arguments regarding the dismissal of enhancements. (See *Mendoza*, *supra*, 88 Cal.App.5th at p. 297, fn. 6; *Lipscomb*, *supra*, 87 Cal.App.5th at p. 15; *Anderson*, *supra*, 88 Cal.App.5th at pp. 239-240.) The existence of multiple enhancements does not automatically require dismissal of all but one.

Moreover, the trial court carefully laid out its reasoning that the mitigating factors listed in section 1385, subdivision (c)(2), were far outweighed by the presence of several aggravating factors compelling a finding of danger to the public if the Defendants' sentences were shortened, where such an act would liberate them earlier to resume their long careers in crime.

The trial court did not err in refusing to strike all but a single enhancement, as permitted by section 1385, subdivision (c)(2)(B).

3. *Whether the Trial Court Was Required to Dismiss the Firearm Enhancement Because it Resulted in a Term of More than 20 Years*

Duisen argues that the trial court was required to dismiss his firearm enhancement (§ 12022.53, subd. (b)) because it resulted in a term of more than 20 years. Macias joined this contention. We disagree.

Section 1385, subdivision (c)(2), lists mitigating factors for the trial court to consider where dismissal of an enhancement would be "in the furtherance of justice." Section 1385, subdivision (c)(2)(C) lists, as a mitigating factor, that the "application of an

enhancement could result in a sentence of over 20 years." However, subdivision (c)(2) of section 1385 provides that section 1385 "does not preclude a trial court from determining that countervailing factors—other than the likelihood of physical or other serious danger to others—may nonetheless neutralize even the great weight of the mitigating circumstances, such that dismissal of the enhancement is not in furtherance of justice." (*People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1098, review granted Apr. 12, 2023, S278894 (*Ortiz*); accord, *People v. Ponder* (2023) 96 Cal.App.5th 1042, 1052, review granted Jan. 10, 2024, S282925 (*Ponder*).)

As explained in *People v. Mazur* (2023) 97 Cal.App.5th 438 (*Mazur*), "'As the plain text of section 1385 repeatedly emphasizes, its purpose is to grant trial court *discretion* to dismiss enhancements. And the purpose of Senate Bill No. 81, as reflected in the Legislative Digest, is to encourage exercise of that discretion by making dismissal mandatory *if it is in the furtherance of justice to do so*.' [Citations.] 'In other words, the dismissal of the enhancement is conditioned on the court's finding dismissal is in the interest of justice.' [Citation.] '[T]he ultimate question before the trial court remains whether it is in the furtherance of justice to dismiss an enhancement.'" (*Id*. at p. 446, citing *Ortiz*, *supra*, 87 Cal.App.5th at p. 1098, review granted; see *Ponder*, *supra*, 96 Cal.App.5th at p. 1052, review granted.)

In *Mazur,* the reviewing court addressed the applicability of the mitigating factor pertaining to a sentence that would exceed 20 years, stating, "This language clarifies that the court must dismiss the charged enhancement if it exercises its discretion to do so, and

17

it cannot simply strike the punishment or the portion of the punishment that would result in a sentence over 20 years." (*Mazur*, *supra*, 97 Cal.App.5th at p. 447.) We agree with this assessment. Nowhere in the Penal Code has the Legislature expressed the intention that no person convicted of a felony should serve more than 20 years in prison, but this is the sum and substance of the Defendants' contention. To the contrary, as we have alluded above, the Legislature's true intent was to achieve punishment, rehabilitation, and restorative justice, by imposing "terms that are proportionate to the seriousness of the offense with provision for uniformity in the sentences of people incarcerated for committing the same offense under similar circumstances." (§ 1170, subd. (a)(1).)

Limiting all prison terms to a cap of 20 years would defeat the goal of achieving terms proportionate to the seriousness of the offense. Indeed, it would mean the de facto repeal of section 12022.53, subdivision (d), for example, which provides for an enhancement of 25 years to life, because the enhancement alone would automatically result in a term of more than 20 years. The Legislature has not repealed section 12022.53, subdivision (d), and has not expressed an intent to limit all sentences to a lid of 20 years, so we reject this interpretation.

In any event, the trial court did not find that dismissal of an enhancement would be in the furtherance of justice; rather, it specifically found that dismissal of the enhancement would endanger public safety, which finding authorizes a trial court to decline to dismiss the enhancement as not being in the interest of justice. "The ultimate question before the trial court was whether it was in the furtherance of justice to dismiss

the enhancement." (*Ponder, supra*, 96 Cal.App.5th at p. 1052, review granted, citing *Ortiz, supra*, 87 Cal.App.5th at p. 1098, review granted.)  Neither Duisen nor Macias has demonstrated that the court erred in failing to find that dismissal of the enhancement would be in furtherance of justice, and the record amply demonstrates why it would not.

Like the court in *Mendoza,* we also conclude that the trial court did not err by determining that section 1385, subdivision (c)(2)(C) did not require it to dismiss the firearm enhancement under subdivision (b) of section 12022.53, in the present case, given the court's finding that dismissal of the enhancement would endanger public safety. (*Mendoza, supra*, 88 Cal.App.5th at p. 297.)

Further, we conclude that the trial court did not abuse its discretion in concluding that striking the enhancement would endanger public safety.  Neither Duisen nor Macias have managed to remain crime-free for more than 40 years of continuous criminal activity.  They have resisted all efforts to reform their conduct or rehabilitate themselves after numerous sentences, grants of probation, and parole supervision.  The fact they committed the crimes at their current ages (Macias was 50, while Duisen was 61 at the time of sentencing) reflects poorly on their arguments that their increasing age makes them less likely to re-offend.

Additionally, the factors relating to the current crime show a cold and calculating plan to strike in the early morning hours while the victims in the house would be unprepared for the sudden strike.  The Defendants appeared to have selected their victims with the same care as they planned the logistics of the crime, knowing there would be

marijuana, money, and a gun present, which was demonstrated by their demands and the focus on Juan's bedroom, where they demanded money, took the ice chest containing the marijuana, and where the gun was located.

Because the court found that striking the firearm enhancements would endanger public safety and that the interests of justice did not require that the enhancements be stricken, the trial court was not required to strike the enhancements to prevent the sentence from exceeding 20 years.

4. *Whether the Trial Court Was Required to Find Duisen had the Ability to pay Before Imposing a Maximum Mandatory Restitution Fine*

Duisen argues the trial court erred in imposing a $10,000 restitution fine without considering his inability to pay. We disagree.

Section 1202.4, subdivision (b)(1), provides in relevant part: "In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record. [¶] (1) The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense. If the person is convicted of a felony, the fine shall not be less than three hundred dollars ($300) and not more than ten thousand dollars ($10,000)." Statutory restitution fines are considered punishment. (*People v. Hanson* (2000) 23 Cal.4th 355, 361.)

Subdivision (b)(2) of section 1202.4 provides: "In setting a felony restitution fine, the court may determine the amount of the fine as the product of the minimum fine

pursuant to paragraph (1) multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted."

Subdivision (c) of section 1202.4 provides in part: "The court shall impose the restitution fine unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record. A defendant's inability to pay shall not be considered a compelling and extraordinary reason not to impose a restitution fine. Inability to pay may be considered only in increasing the amount of the restitution fine in excess of the minimum fine pursuant to paragraph (1) of subdivision (b)."

Subdivision (d) of section 1202.4 provides: "In setting the amount of the fine pursuant to subdivision (b) in excess of the minimum fine pursuant to paragraph (1) of subdivision (b), the court shall consider any relevant factors, including, but not limited to, the defendant's inability to pay, the seriousness and gravity of the offense and the circumstances of its commission, any economic gain derived by the defendant as a result of the crime, the extent to which any other person suffered losses as a result of the crime, and the number of victims involved in the crime. Those losses may include pecuniary losses to the victim or the victim's dependents as well as intangible losses, such as psychological harm caused by the crime. Consideration of a defendant's inability to pay may include the defendant's future earning capacity. A defendant shall bear the burden of demonstrating the defendant's inability to pay. Express findings by the court as to the

21

factors bearing on the amount of the fine shall not be required.  A separate hearing for the fine shall not be required."

Inability to pay is a factor for the court to consider in setting the amount of a restitution fine in excess of the mandatory minimum restitution fine, alongside "any relevant factors including, but not limited to, . . . the seriousness and gravity of the offense and the circumstances of its commission, any economic gain derived by the defendant as a result of the crime, the extent to which any other person suffered losses as a result of the crime, and the number of victims involved in the crime."  (§ 1202.4, subd. (d); see *People v. Potts* (2019) 6 Cal.5th 1012, 1056-1057 ["Those losses may include pecuniary losses to the victim or his or her dependents as well as intangible losses, such as psychological harm caused by the crime"].)  The court is "permitted to conclude that the monetary burden the restitution fine imposed on defendant was outweighed by other considerations."  (*Potts*, *supra*, at p. 1057.)

However, the statute expressly states that a defendant's inability to pay is not a compelling reason to not impose a restitution fine.  Under governing law, it is the defendant who must "bear the burden of demonstrating [his or her] inability to pay." (§ 1202.4, subd. (d); *People v. Chhoun* (2021) 11 Cal.5th 1, 55; *People v. Castellano* (2019) 33 Cal.App.5th 485, 490.)

""'Ability to pay does not necessarily require existing employment or cash on hand." [Citation.]  "[I]n determining whether a defendant has the ability to pay a restitution fine, the court is not limited to considering a defendant's *present* ability but

22

may consider a defendant's ability to pay in the future." [Citation.] This include[s] the defendant's ability to obtain prison wages and to earn money after his release from custody."' (*People v. Aviles* (2019) 39 Cal.App.5th 1055, 1076, quoting *People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837 (*Hennessey*); *People v. Frye* (1994) 21 Cal.App.4th 1483, 1487 (*Frye*); *People v. Ramirez* (1995) 39 Cal.App.4th 1369, 1377.)

For this reason, although Duisen objected below that the restitution fine was excessive, he did not carry his burden of proving inability to pay because "[A]bility to pay includes '[his] ability to obtain prison wages and to earn money after his release from custody."' (*People v. Cervantes* (2020) 46 Cal.App.5th 213, 229, quoting *Hennessey*, *supra*, 37 Cal.App.4th at p. 1837.) In this regard, every able-bodied prisoner imprisoned in any state prison is required to engage in "faithful labor" during his or her term of imprisonment. (§ 2700; *Cervantes*, *supra*, at p. 229.) Thus, "a finding of ability to pay a restitution fine may be based on the wages a defendant will earn in prison." (*People v. Douglas* (1995) 39 Cal.App.4th 1385, 1397, citing *People v. Gentry* (1994) 28 Cal.App.4th 1374, 1377; *Frye*, *supra*, 21 Cal.App.4th at p. 1487.)

The trial court did not err in imposing the maximum restitution fine by considering Duisen's potential for earning prison wages. As a person who was able-bodied enough to execute the present offenses, Duisen is presumed to be able to participate in work programs in the prison system.

5. *Whether the Trial Court Sentenced Macias Based on Improper Factors in*

    *Aggravation*

Macias argues the trial court abused its discretion by relying on improper aggravating factors. Macias acknowledges the trial court did not impose the upper term but asserts the reliance on improper factors led to the trial court's discretionary exercises in refusing to strike Macias's strike allegation, the nickel prior enhancement, as well as the firearm enhancement (which we discuss elsewhere in this opinion) and affected the court's decision to impose consecutive versus concurrent terms. We disagree.

Rule 4.425 of the California Rules of Court[9] sets forth the factors to be considered by a trial court in deciding whether to impose concurrent or consecutive terms: "Facts relating to crimes, including whether or not: [¶] (1) The crimes and their objectives were predominantly independent of each other; [¶] (2) The crimes involved separate acts of violence or threats of violence; or [¶] (3) The crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior."

Rule 4.425(b) provides: "Any circumstances in aggravation or mitigation, whether or not the factors have been stipulated to by the defendant or found true beyond a reasonable doubt at trial by a jury or the judge in a court trial, may be considered in deciding whether to impose consecutive rather than concurrent sentences, except: [¶] (1) A fact used to impose the upper term; [¶] (2) A fact used to otherwise enhance the

---

[9]     All rule references are to the California Rules of Court.

defendant's sentence in prison or county jail under section 1170[, subdivision] (h); and [¶] (3) A fact that is an element of the crime."

Here, the court imposed one-third the middle term for count 2 (assault with a firearm), but the firearm enhancement for that count was dismissed. The court also stayed the sentence on count 9, Macias's conviction for possession of a firearm by a felon. The court's decision to impose the consecutive term for count 2 was based on its determination that the crimes and their objectives were independent of each other, and the crimes involved separate acts of violence against separate individuals, as provided by rule 4.425.

At the sentencing hearing, Macias did not object to the court's reliance on the factors set out in rule 4.425, governing the decision to impose consecutive terms for counts 2 and 9, and he presents no argument that the court's reliance on those factors was erroneous. His sole request was that the court should strike his firearm enhancement pursuant to section 1385, subdivision (c)(2)(C), and he did not object to the aggravating facts cited by the court in its other discretionary decisions. As such, any objection to the decision to impose consecutive rather than concurrent terms has been forfeited. (*Scott, supra*, 9 Cal.4th at pp. 351-356.)

We have separately addressed the court's decision to not strike the firearm enhancement to count 1, and there is no need for further discussion of that enhancement. The enhancement to count 2 was stricken and there were no additional enhancements imposed as to Macias's sentence except for the nickel prior, which we address in the next

section. The trial court did not erroneously refuse to strike the firearm enhancement or decide to impose consecutive terms relying upon erroneous factors in aggravation.

6. *Whether the Trial Court Erred in Declining to Dismiss Macias's Nickel Prior Based on the Erroneous Belief that Section 667, Subdivision (a)(1) Was Part of the Three Strikes Law*

Macias argues the trial court erred in declining to strike his nickel prior conviction (§ 667, subd. (a)(1)), based on its erroneous belief that section 667, subdivision (a)(1), governing the imposition of enhancements for such prior convictions, was part of the Three Strikes law, for which, as an alternative sentencing scheme, section 1385, subdivision (c) did not apply. We agree the court was mistaken in making that statement, but do not agree that reversal is required.

Section 667, subdivision (a)(1), was enacted upon voter approval of Proposition 8, on June 8, 1982, providing for imposition of a five-year enhancement for repeat offenders who commit serious felonies. (*People v. Jackson* (1985) 37 Cal.3d 826, 830.) Macias's prior robbery conviction is a serious felony listed in section 1192.7, subdivision (c)(19).

The term '"enhancement"' has a well-established technical meaning in California law. (*Romero*, *supra*, 13 Cal.4th at pp. 526-527.) "A sentence enhancement is 'an additional term of imprisonment added to the base term.'" (*People v. Jefferson* (1999) 21 Cal.4th 86, 101, italics omitted; see rule 4.405(5).)

The Three Strikes law is not an enhancement; it is an alternative sentencing scheme for the current offense. (*Romero*, *supra*, 13 Cal.4th at p. 527; *People v. Williams*

26

(2014) 227 Cal.App.4th 733, 744.)  As such, the amended provisions of section 1385,
subdivision (c), do not apply to invitations that the court exercise its authority to dismiss
a strike allegation.  (*People v. Burke* (2023) 89 Cal.App.5th 237, 243-244 (*Burke*).)
Instead, section 1385, subdivision (a) governs the exercises of discretion to dismiss or
strike a strike.

However, as to an enhancement alleged under section 667, subdivision (a)(1),
section 1385, subdivisions (b) and (c) apply, where circumstances exist.  Those
circumstances come into play once a court determines that it is in the furtherance of
justice to exercise its discretion to strike an enhancement.  In such cases, the trial court
considers the mitigating factors listed in section 1385, subdivision (c).  Under the Three
Strikes law, the trial court has discretion to strike the strike under section 1385,
subdivision (a), although that exercise of discretion applies a different standard.  (*People
v. Salazar* (2023) 15 Cal.5th 416, 428 (*Salazar*).)

In the present case, we agree that the trial court incorrectly concluded that section
1385, subdivision (c), did not apply to Macias's nickel prior enhancement for the reasons
it stated.  However, that does not mean the court's refusal to strike the enhancement was
erroneous.  The court provided alternative reasons for declining to strike the
enhancement, indicating, "if the Appeals Court disagrees with my analysis and finds that
[section] 667[, subdivision] (a) five-year nickel priors are indeed enhancements that must
be analyzed under [section] 1385, the presence of these potentially mitigating
circumstances are again outweighed substantially in this Court's view that the dismissal

27

of the [section] 667[, subdivision] (a) five-year prior would similarly endanger public safety in the present case for the exact same reasons as this Court previously just stated in its analysis of [section] 12022.53[, subdivision] (b), gun enhancement."

Therefore, although the trial court appears to have erroneously considered enhancements under section 667, subdivision (a) to be a part of the Three Strikes law, it made clear its determination that the enhancement would not be stricken even if it were covered by the amendments to section 1385, subdivision (c). It then proceeded to recite the aggravating factors supporting this decision.

"[W]hen a sentencing court was not aware of the full scope of its discretionary powers at the time the defendant was sentenced, 'the appropriate remedy is to remand for resentencing unless the record "clearly indicate[s]" that the trial court would have reached the same conclusion "even if it had been aware that it had such discretion."'" (*Salazar*, *supra*, 15 Cal.5th at p. 419, quoting *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)

"The record in this case demonstrates with unusual clarity that remand would be an idle act." (*People v. Flores* (2020) 9 Cal.5th 371, 432, citing *People v. McDaniels* (2018) 22 Cal.App.5th 420, 425.) While the trial court in the present case may have misunderstood the nature of a nickel prior in relation to the Three Strikes law, it clearly indicated it would have reached the same decision even if it had been aware that section 1385, subdivision (c), applied to nickel priors. We therefore find the error was harmless. (*People v. Watson* (1956) 46 Cal.2d, 818, 836.)

7. *Whether the Trial Court Erred in Refusing to Dismiss Macias's Prior Strike*

Macias argues the trial court erred in declining to consider dismissing his "strike" conviction under section 1385, subdivision (c)(2). However, Macias did not make a de jure *Romero* motion as did Duisen; instead, he argues the court had discretion to strike the strike pursuant to section 1385, subdivision (c)(2). We disagree.

First, Macias's failure to make a *Romero* motion forfeits the argument. (*People v. Carmony* (2004) 33 Cal.4th 367, 375-376 ["any failure on the part of a defendant to invite the court to dismiss under section 1385 following *Romero* waives or forfeits his or her right to raise the issue on appeal"], citing *Scott*, *supra*, 9 Cal.4th at pp. 352-353.) This is not merely a technical failure, because the analyses performed by a trial court in deciding whether a defendant merits punishment under the Three Strikes law differs from the exercise of discretion performed in deciding to strike an enhancement under section 1385, subdivision (c).

Therefore, even if we reached the merits, we agree with the decisions holding that the amendatory provisions of section 1385, subdivision (c)(2), do not apply to strikes, because the Three Strikes law gives rise to an alternative sentencing scheme, rather than the imposition of an additional term for an enhancement. (See *Burke*, *supra*, 89 Cal.App.5th at p. 243.) Section 1385, subdivision (a) permits a court acting on its own motion to strike prior felony conviction allegations in cases brought under the Three Strikes law. (*Romero*, *supra*, 13 Cal.4th at pp. 529-530.)

29

The two provisions employ very different standards for a trial court making the decision whether to strike or dismiss an allegation.  Under section 1385, subdivision (c), the trial court's focus, in deciding whether to strike an enhancement, is on the existence, *vel non*, of factors in mitigation.  As observed in *People v. Strong* (2001) 87 Cal.App.4th 328, "[T]he Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court 'concludes that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme.'"  (*Id.*, at pp. 337-338.)

Under section 1385, subdivision (a), the court faced with an invitation to strike a prior under the Three Strikes law "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."  (*People v. Williams* (1998) 17 Cal.4th 148, 161, see *People v. Philpot* (2004) 122 Cal.App.4th 893, 905; *People v. Garcia* (1999) 20 Cal.4th 490, 498-499.)

Because the purpose of the Three Strikes law is to insure longer sentences for career criminals, a defendant with an "unrelenting record of recidivism, even while on parole or probation from previous felony convictions" "is the kind of revolving-door

career criminal for whom the Three Strikes law was devised." (*People v. Gaston* (1999) 74 Cal.App.4th 310, 320.)

By contrast, section 1385, subdivision (c)(2), as it applies to enhancements, authorizes a court to strike an enhancement based on the existence of mitigating factors, unless the dismissal of the enhancement would not be in the furtherance of justice because it would endanger public safety. The court is required to "afford great weight" to evidence proffered by a defendant as to the existence of mitigating factors. (§ 1385, subd. (c)(2).)

Macias did not request that the court exercise its discretion under section 1385, subdivision (a) to find that Macias is "outside the spirit" of the Three Strikes law. (See *Carmony*, *supra*, 33 Cal.4th at pp. 377-378; see also *Strong*, *supra*, 87 Cal.App.4th at pp. 337-338.) Nor did Macias proffer any argument or evidence tending to show he was not the sort of "revolving door" defendant for whom the Three Strikes law was enacted. Under these circumstances, we conclude the trial court properly declined to exercise the discretion reserved for the striking of enhancements to dismiss or strike Macias's strike allegation. The fact Macias was willing to plead guilty at an earlier stage of the proceedings, the only mitigating factor found by the trial court, is not a proper factor on which the court could rely in determining whether a defendant is "outside the spirit" of the Three Strikes law.

The trial court did not err.

31

**DISPOSITION**

The judgments and sentences are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ _____
P. J.


We concur:

FIELDS _____
J.
MENETREZ _____
J.